UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHANE D. HATTER,

    Plaintiff,

v.                                      CAUSE NO. 3:19-CV-1091 DRL-MGG

MARSHALL CO. SHERIFF'S DEPT. *et al.*,

    Defendants.

## OPINION AND ORDER

Shane D. Hatter, a prisoner without a lawyer, proceeds on a Fourteenth Amendment claim against Sheriff Hassel and Jailer Holcomb for allegedly subjecting him to overcrowded conditions at the Marshall County Jail, which caused him to sleep on the floor and to sit on the toilet and floor to eat meals. He also proceeds on a claim against the Marshall County Sheriff's Department for maintaining a policy or practice of overcrowding. The defendants filed a motion for summary judgment, arguing that they had limited personal involvement with Mr. Hatter's living conditions and that Mr. Hatter was assigned a floor bunk for only a month and a half.

## FACTS

In support of the motion, Matt Hassel, the Marshall County Sheriff, submitted an affidavit, attesting to the following facts. The Marshall County Jail has 233 permanent beds. From 2017 to 2018, the average daily population of the jail rose sharply from 153 inmates to 210 inmates. As early as the fall 2018, Sheriff Hassel developed concerns about the potential for overcrowding and met with other local governmental officials, including

judges, the county council, and the county prosecutor, in an effort to find a solution; and the local governmental officials pursued substantial measures toward that end. Despite these efforts, the inmate population continued to rise in 2019 with the average daily inmate population first exceeding the permanent bed capacity in March, peaking in August with 292 inmates, and never falling below 232 inmates. However, in 2020, the average daily population began to fall, dropping below two hundred inmates by April and not rising above that average since.

Andrew Holcomb, chief jail officer at the Marshall County Jail, also submitted an affidavit, attesting that the overcrowded conditions culminated in the June 2019 decision to assign one inmate to sleep on a six-inch thick mat on the floor in each of the jail's four-man cells, which was the largest cell available in the jail.[1] Though these floor assignments limited space to maneuver within these cells, inmates could still navigate without making physical contact with the floor assignee if they were careful.[2] Inmates were also free to move about the dayroom, except at night between 10:00 p.m. and 7:00 a.m. and during a brief lockdown each afternoon for count. Though inmates in these pods outnumbered the available seats at the dayroom tables, inmates were allowed to eat meals on their bunks or while standing or to wait until a seat became available. Jail staff also modified other areas of the jail to address the additional housing needs and ordered portable bunks so that inmates would no longer have to sleep on a mat on the floor.

---

[1] Jail staff accommodated the surplus inmate population by using intake cells prior to this time.

[2] Jailer Holcomb attached photographs of this arrangement, and they are consistent with the description in his affidavit.

Jailer Holcomb further attests that Mr. Hatter was assigned to a floor bunk in a four-man cell from November 30, 2019 to January 2, 2020, from January 7 to January 9, 2020, and January 21 to January 30, 2020.

In response, Mr. Hatter represents that waiting until a seat at the table became available was not an option during meals because trays were collected after a limited period of time. He further represents that the overcrowded conditions caused him stress and anxiety and that he began taking medication. In a grievance, dated January 27, 2020, Mr. Hatter asked for a transfer because he had been charged with a crime against jail staff and received threats from them and due to the overcrowded conditions. Jailer Holcomb denied the request due to his inability to substantiate the allegations of jail staff misconduct and because efforts to alleviate the overcrowded conditions were underway, though he invited Mr. Hatter to provide more specific information regarding the alleged misconduct.

## STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding

court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## DISCUSSION

Mr. Hatter asserts a Fourteenth Amendment claim against Sheriff Hassel and Jailer Holcomb for subjecting him to overcrowded conditions at the Marshall County Jail which forced him to sleep on the floor and to sit on the floor or toilet to eat meals. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[P]unishment can consist of actions taken with an expressed intent to punish," or, "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015). To prevail on such a claim, a plaintiff must show that the defendants' conduct was objectively unreasonable based on the facts and circumstances of his particular case. *Id.; Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). For § 1983 claims against individuals, "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

To start, the record demonstrates that the defendants were generally aware of the overcrowded conditions at the jail but contains no evidence that they were aware of Mr. Hatter's specific living concerns. Further, the record demonstrates that the defendants

4

responded reasonably to the overcrowded conditions by coordinating with local governmental officials to reduce the inmate population during year before the jail exceeded its permanent bed capacity. These efforts consisted of releasing inmates on bond, reducing sentences, and expediting criminal proceedings by establishing a new court and by hiring more prosecuting attorneys. With these substantial measures, they were able to reduce the inmate population below the permanent bed capacity within one year. They also attempted to reach an agreement with another county jail, though this effort was unsuccessful, and sought funding for a jail expansion, though an expansion no longer appears to be necessary due to the decreased inmate population throughout 2020. Further, the efforts to reduce the inmate population understandably took some time, and the defendants reasonably addressed the overcrowded conditions during the interim period by placing an additional inmate in their largest cells and by modifying various areas of the jail to include beds for the surplus inmate population.

      Additionally, the record contains no evidence to suggest that the overcrowded conditions warranted more extreme measures. The photographs of the floor bunk arrangement demonstrate that the sleeping conditions were not so unreasonable as to constitute punishment. Similarly, no reasonable jury could find that the insufficient number of seats at the dayroom table violated Mr. Hatter's constitutional rights given that he could sit on his bunk or stand in the event that he was unable to obtain seating at the table during a particular meal. The duration of the floor-bunk assignments for Mr. Hatter were modest in light of these circumstances and reasonable accomodations.

Mr. Hatter responds that Jailer Holcomb refused to transfer him when he submitted a grievance regarding jail staff misconduct and the overcrowded conditions. Jailer Holcomb's response was reasonable given the lack of evidence to support the allegations of misconduct and given the substantial efforts to address the overcrowded conditions of the jail. Further, while Mr. Hatter represents that the overcrowded conditions affected his mental health, he did not convey this information to Jailer Holcomb, and he also received medication to alleviate the stress and anxiety.

Mr. Hatter asserts a claim against the Marshall County Sheriff's Department for the policy or practice of overcrowding the Marshall County Jail. For § 1983 claims, corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). A corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." *Id.* Absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The policy or custom must be the "moving force behind the deprivation of his constitutional rights." *Johnson v. Cook Cty.*, 526 F. Appx. 692, 695 (7th Cir. 2013). The record does not suggest that the overcrowded conditions were intended as punishment or that they were so excessively unreasonable as to constitute punishment. Absent a constitutional violation, Mr. Hatter cannot proceed on his claim against the Marshall County Sheriff's Department.

On this evidentiary record, no reasonable jury could conclude that the defendants' response to the overcrowded conditions was objectively unreasonable or that the overcrowded conditions violated Mr. Hatter's constitutional rights. Therefore, Mr. Hatter's motion for summary judgment is denied, and the defendants' motion for summary judgment is granted with respect to the Fourteenth Amendment claim against Sheriff Hassel and Jailer Holcomb and the claim against the Marshall County Sheriff's Department. No other claims remain in this case.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 22); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED.

January 14, 2021                                *s/ Damon R. Leichty*
                                                Judge, United States District Court